SO ORDERED.

SIGNED this 13th day of July, 2016.





_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>DERICK R. MATTHEW<br>       Debtor. | Case No. 15-12605<br>Chapter 7 |
| ALLY FINANCIAL INC.<br>       Plaintiff,<br>vs.<br>DERICK R. MATTHEW<br>       Defendant. | Adv. No. 16-5038 |

ORDER DENYING MOTION TO DISMISS

1

A creditor's complaint to determine nondischargeability of a debt must state enough facts to "raise a right to relief above the speculative level,"[1] facts that support a claim that is plausible on its face.[2] If it doesn't, the complaint fails to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6) and must be dismissed. Viewing its allegations as true, Ally Financial Inc.'s complaint to except its debt from Derick Matthew's discharge under § 523(a)(2)(A) states sufficient facts from which the elements of a false representation exception may be found. Matthew's motion to dismiss Ally's second claim, that his willful and malicious damage to its collateral should be excepted from his discharge under § 523(a)(6), is also denied.[3]

**Ally's Complaint**

Ally's complaint alleges that about a year before Derek Matthew filed his bankruptcy petition on December 9, 2015, he granted Ally a security interest in a 2012 Chevrolet Tahoe by executing a Retail Installment Contract with Lubbers Chevrolet, later assigned to Ally. A copy of the Contract is attached to the complaint. Under the Contract, Matthew purchased this vehicle for $41,834 with a $1,000 down payment, bought a service agreement for $1,895, and financed $43,892. He agreed to repay that amount over 72 months at $768 a month. Per the contract, he also agreed he'd bought the vehicle for personal, family or household use and that he would not sell, encumber, or otherwise transfer the vehicle without the lender's written permission.

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).
[3] Kathryn A. Klein appears as counsel for Ally Financial Inc. Edward J. Nazar appears as counsel for defendant Derick Mathew.

2

Ally says that notwithstanding these assurances, Matthew made no payments on the Contract and lacked the ability to repay because he "was indebted to other creditors and was insolvent."[4] Ally also claims that Matthew "thinks that Lindsay Humphries has the vehicle and she may live in Kansas City, or it may have been repossessed."[5] From this, Ally concludes that Matthew falsely represented that the vehicle was intended for his use, that he could repay the debt it secured, and that he intended to pay it. Ally relied on those alleged false representations in making the car loan. Ally also says that when Matthew suffered Ms. Humphries to take the vehicle, he did so willfully and maliciously with intent to harm Ally.

Matthew moves to dismiss this complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[6] He argues that all Ally has alleged is a breach of contract, and that this fails to state a claim that its debt should be excepted from Matthew's discharge either for a false representation under 11 U.S.C. § 523(a)(2)(A) or for willful and malicious injury under § 523(a)(6). For the purpose of deciding this motion, I take the complaint's allegations to be true.

### Analysis

A complaint states a claim upon which relief may be granted when it contains information that is plausible on its face, including facts sufficient to raise the plaintiff's right to relief beyond a "speculative level."[7] The rules require actions that

---

[4] Doc. 1, ¶ 9.
[5] Doc. 1, ¶ 5. This factual allegation is based upon Matthew's testimony at his § 341 meeting. The date of the transfer of the vehicle to Ms. Humphries is not specified.
[6] Fed. R. Civ. P. 12(b)(6) applies in adversary proceedings, *see* Fed. R. Bankr. P. 7012.
[7] *See Twombly* and *Iqbal*, *supra*.

**3**

allege fraud to plead the supporting factual circumstances with "particularity."[8] Ally suggests that when Matthew signed the Contract, he made certain false representations that Ally relied on to its detriment and that when he let Ms. Humphries take the Tahoe, he willfully and maliciously damaged Ally's interests. Proving either claim would suffice to except Ally's debt from Matthew's discharge.

To ultimately prevail on a § 523(a)(2) false representation exception, Ally must demonstrate that it justifiably relied on one or more false statements made by the debtor with intent to defraud and that it was harmed by that representation.[9] Intent to deceive may be inferred from the totality of the circumstances, or from a knowingly false statement.[10] Taking the allegations of the complaint as true, a fact finder could infer from them that when Matthew agreed to pay, he misrepresented his real intentions not to. One could also infer that when Matthew agreed not to transfer the vehicle, he misrepresented his real intention to give it to Ms. Humphries. The complaint reflects that Matthew put $1,000 down on a $42,000 vehicle, that he agreed to make 72 consecutive monthly $768 payments, and that he never made a one. Ally also pleads that Matthew was in debt to other creditors when he made this deal and that he was insolvent. Matthew represented in the Contract that he was acquiring the vehicle for his personal use. Then the vehicle disappeared and, according to Matthew, his former girlfriend might have it in Kansas City. Ally's statement of these

---

[8] Fed. R. Civ. P. 9(b).
[9] *See Field v. Mans*, 516 U.S. 59, 70 (1995) (reliance need only be justifiable); *In re Jacobson,* 485 B.R. 255, 261 (Bankr. D. Kan. 2013) (elements of false representation discharge exception);
[10] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1375 (10th Cir. 1996); *In re Jacobson, supra.*

4

circumstances is sufficiently specific to support its claim that Matthew procured this car loan by false representations. At trial, more testimony about the debtor's financial circumstances at the time he incurred the debt, his employment status, his level of financial sophistication, and the circumstances regarding the transfer of the vehicle, may shed light on his intentions.[11] He may have a plausible explanation for his actions. But Rule 12(b)(b)(6) doesn't focus on the plausibility of his explanation or what can be proven at trial. What is in the complaint is what matters. Although it is close, Ally has stated with sufficient particularity the circumstances upon which it relies as Rule 9(b) requires and the complaint states a claim upon which relief can be granted under Rule 12(b)(6).

Ally's § 523(a)(6) willful and malicious injury claim, though somewhat thin, also states a claim. Ally says that Matthew agreed to retain the Tahoe for his personal use, gave it to Humphries or let her use it, and now doesn't know where the vehicle is. To prove a § 523(a)(6) exception here, Ally would have to show that Matthew placed Humphries in possession of the vehicle willfully and that he knew doing so would damage Ally's interests. Ally's claim as pled here amounts to conversion—that Matthew has cooperated in allowing Humphries to assert ownership of the vehicle despite Ally's lien and to the exclusion of Ally's rights in the vehicle.[12] Ally also

---

[11] *See Chevy Chase Bank FSB v. Kukuk (In re Kukuk),* 225 B.R. 778, 786-87 (10th Cir. BAP 1998)(in credit card debt case debtor's fraudulent intent should be discerned from the circumstances of a particular case and factors identified by the courts are guidelines, with no one factor being determinative; debtor's intent not to perform the promises under the Contract cannot be established solely by nonperformance).

[12] *Bank v. Parish*, 46 Kan. App.2d 422, 433-34, 264 P. 3d 491 (2011) (hindering Bank's right to exert control over and obtain possession of vehicle or proceeds from sheriff's sale of vehicle constituted conversion), *aff'd* 298 Kan. 755, 317 P.3d 750 (2014) .

pleaded that in giving Humphries the vehicle, Matthew's "actions were certain to cause Ally harm by not allowing Ally the ability to obtain possession of the vehicle."[13]

The § 523(a)(6) exception, as interpreted by the Supreme Court in *Kawaauhau v. Geiger,* requires not only that conversion be shown, but also that Matthew intended to cause damage to Ally or its lien interest.[14] The Supreme Court applied the subjective intent standard for intentional torts from § 8A of the Restatement (Second) of Torts, requiring that the debtor either "desires to cause [injury] . . . or . . . believes that the [injury] . . . is substantially certain to result from [the act].[15] Ally's complaint sets out circumstances from which a court might plausibly conclude that Matthew gave Humphries the Tahoe knowing that in doing so it was "substantially certain" to harm Ally's interest in the collateral.[16] A "willful and malicious" claim need not be pled with as much specificity as a fraud-based claim because Rule 9(b) specifically permits "malice, intent, knowledge and other conditions of a person's mind" to be

---

[13] Doc. 1, ¶ 16.
[14] 523 U.S. 57, 61-62 (1998) (medical malpractice judgment against doctor for negligently or recklessly inflicting injury lies outside the willful and malicious injury discharge exception; § 523(a)(6) is confined to debts for an intentional tort and requires a deliberate or intentional injury).
[15] Restatement (Second) of Torts § 8A (1965), Comment b.
[16] The Tenth Circuit Bankruptcy Appellate Panel has held that the willful and malicious injury standard of *Kawaauhau* is satisfied where the debtor intends the injury or believes the consequences of the debtor's act are substantially certain to occur. *See Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley),* 235 B.R. 651, 657 (10th Cir. BAP 1999) (intent to injure may be established by direct or indirect evidence; citing Restatement (Second) of Torts §8A, intended consequences includes those that are substantially certain to result from the act). *See also Via Christi Regional Medical Ctr. v. Englehart (In re Englehart),* 229 F.3d 1163 [Table], 2000 WL 1275614 (10th Cir. 2000) (willful and malicious injury turns on debtor's subjective intent or state of mind – he must have wished to cause injury or believed it was substantially certain to occur); *In re Schupbach,* 500 B.R. 22, 35 (Bankr. D. Kan. 2013).

6

generally alleged.[17] While not all conversions necessarily fall within the § 523(a)(6) exception, Ally has pleaded sufficient facts from which a willful and malicious injury may be inferred and has therefore stated a claim under § 523(a)(6).[18]

In conclusion, Ally has pled plausible nondischargeability claims under § 523(a)(2)(A) and § 523(a)(6) sufficient to withstand Matthew's motion to dismiss for failure to state a claim upon which relief may be granted. Matthew's motion to dismiss under Rule 12(b)(6) is therefore DENIED.

# # #

---

[17] *See* Fed. R. Civ. P. 9(b).
[18] *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332 (1934) (automobile dealer's sale of automobile in ordinary course of business to customer without consent of floor plan lender and without remitting proceeds to lender was not a willful and malicious conversion; conversions that are "innocent" or "technical," are not within the scope of the discharge exception, such as a conversion under an honest but mistaken belief, engendered by a course of dealing); *In re Longley, supra* (debtor's intentional transfer of vehicle at gunpoint to drug dealer was to avoid threatened physical harm, not to harm or injure the secured creditor or its lien rights); *In re Diel,* 277 B.R. 778, 783 (Bankr. D. Kan. 2002) (transfers of collateral in breach of a security agreement may give rise to nondischargeability when the debtor's conduct is knowing and certain to cause financial harm); *Tinker v. Colwell,* 193 U.S. 473, 486 (1904) (malice prong satisfied by showing injury was inflicted without just cause or excuse).

7